FOWLER, RODRIGUEZ & CHALOS, LLP
George M. Chalos, Esq.
Brian T. McCarthy, Esq.
Attorneys for Specially Appearing Petitioners
VENETICO MARINE S.A. and
M/V IRENE E.M., *in rem,*
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
E-mail: gmc@frc-law.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VENETICO MARINE S.A., as Owner of M/V IRENE E.M., and the M.V IRENE E.M., *in rem,*  Petitioners, v.  UNITED STATES OF AMERICA, UNITED STATES COAST GUARD, and UNITED STATES CUSTOMS AND BORDER PROTECTION AGENCY,  Respondents. | Case No.   0 5 - 8 8 8 |

**VENETICO'S PETITION FOR THE RELEASE OF THE
MOTOR VESSEL, *IRENE E.M.*
OR IN THE ALTERNATIVE, TO FIX SECURITY**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COME NOW, through undersigned counsel and pursuant to Supplemental Rule

E(8), Specially Appearing Petitioners, Venetico Marine S.A., Owner of the M/V IRENE

E.M., (hereinafter "Owner"), and the M/V IRENE E.M., *in rem,* to Petition this

Honorable Court for an Order releasing the vessel, M/V IRENE E.M. (hereinafter

1

"vessel"), or in the alternative for an Order fixing security, (if any), for the release of the vessel, as (1) the Coast Guard is not authorized to withhold a vessel's customs clearance; (2) the vessel is being improperly detained at Marcus Hook Anchorage, (3) the terms, conditions and quantum of security demanded by the Coast Guard for the release of the vessel are unjustified and unsupportable as a matter of fact, law and equity, and (4) all such actions are needlessly and impermissibly causing serious and irreparable harm to Petitioners, the vessel and her crew.

## JURISDICTION AND VENUE

1.   The Court has subject matter jurisdiction as Petitioners set forth an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is based in admiralty pursuant to 28 U.S.C. § 1333 and Rules E and C of the Supplemental Rules For Certain Admiralty and Maritime Claims. In addition, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1346, as the United States of America is a defendant.

2.   Venue is proper pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1402, as the United States is a named defendant; the vessel is currently within the District of Delaware; the vessel is being detained within this District by the Commander of the United States Coast Guard, Sector Delaware Bay; and the Office of the United States Attorney for the District of Delaware, upon information and belief, is in charge of the investigation relating to a possible violation of 33 U.S.C. § 1901, *et. seq.* (hereafter "The Act to Prevent Pollution from Ship" or "APPS").[1]

---

[1] APPS adopts as U.S. law the provisions of the International Convention for the Prevention of Pollution from Ships (hereinafter "MARPOL"). The MARPOL Protocol, more formally known as the Protocol of 1978 relating to the International Convention for the Prevention of Pollution from Ships, is a treaty to

## THE VESSEL

3.  The vessel, the M/V IRENE E.M., is a bulk carrier of 30,025 deadweight tons.

4.  The vessel is owned by Venetico Marine S.A., a company incorporated under the laws of the Republic of Liberia, with its registered office at 80 Broad Street, Monrovia, Liberia.

5.  The vessel is managed by Chian Spirit Maritime Enterprises Inc., a company incorporated under the laws of the Republic of Liberia, with a registered office at 80 Broad Street, Monrovia, Liberia, and with a principal place of business at 10, Antoniou Ampatielou & Sakitouri Streets, Piraeus, Greece.

6.  The vessel was built in 1980, and is registered in St. Vincent and the Grenadines Islands. A copy of the vessel's Certificate of Registry is attached hereto as Exhibit A.

7.  The vessel's classification society is Bureau Veritas.

## THE DETENTION OF THE VESSEL

8.  On or about December 5, 2005, the vessel arrived at Big Stone Anchorage, Delaware Bay, Delaware. Previously, the vessel had departed from Brazil on November 20, 2005, destined for Camden, N.J.

9.  Shortly after arrival in Delaware Bay, four (4) Coast Guard officers boarded the vessel to conduct a Port State Control inspection.[2]

---

which the United States is a party. Its' provisions are codified as U.S. law at 33 USC 1901, et. seq.; See also United States of America v. Royal Caribbean Cruises Ltd., 11 F. Supp. 2d1358, 1368 (S.D.Fl. 1998).
[2] Several operational deficiencies were initially identified, (*See* Coast Guard Port State control report attached hereto as Exhibit B). However, all noted deficiencies have been fully rectified. (*See* Bureau Veritas Report and Correspondence to Coast Guard, attached hereto as Exhibit C).

10.     Thereafter, on or about December 9, 2005, several additional Coast Guard officers attended on board the vessel.

11.     Subsequently, on December 11, 2005, United States Coast Guard, by authority of Captain D.L. Scott, Captain of the Port of Delaware Bay, issued Captain of the Port Order 120-05, which, in pertinent part, requires the subject vessel to remain within the Port of Delaware Bay, and restricts her from leaving the Port of Delaware Bay without the express written authorization of the Captain of the Port. A true and complete copy of the December 11, 2005, Captain of the Port Order is attached hereto as Exhibit D.

12.     On December 13, 2005, a second letter was issued to the vessel Owner by Captain Scott. A true and complete copy of the December 13, 2005 Captain of the Port letter is attached hereto as Exhibit E.

13.     This second Captain of the Port letter provides, in pertinent part, that the Coast Guard, in an exercise of its <u>purported</u> authority, has detained the vessel by "intending" to request the United States Customs and Border Protection Agency (hereinafter, "CBP") to withhold her customs clearance. In simple terms, the letter provides that the Coast Guard will not permit the vessel to depart from the Port of Delaware Bay, unless and until Petitioners post "a bond or other surety satisfactory to the secretary" in accordance with 33 USC § 1908(e). *See* Exhibit E.

## THE COAST GUARD'S SECURITY DEMANDS

14.     The Coast Guard's claims for "satisfactory" surety, as more fully described below, are without basis; are unauthorized in law or fact; and are otherwise arbitrary and

capricious. There is no statutory authority for any of the demands presently being made by the Coast Guard as a condition precedent for the release of Petitioner's vessel.

15.     Specifically, the Coast Guard has demanded that Petitioners, *inter alia*: (1) post a surety bond in the amount of $1 million; and (2) designate a U.S. agent "to accept notice or service of process" for itself, the vessel <u>and</u> for the Manager of the vessel, Messrs. Chian Spirit Maritime Enterprises, Inc.

16.     Additionally, the Coast Guard has further advised Petitioners that it has identified twelve (12) crewmembers, which, for reasons that remain unclear, it is demanding Petitioner remove from the vessel and replace with new crewmembers who, as a practical matter, must be found and flown [to the vessel] from various overseas locations.

17.     The Coast Guard has further demanded that the Petitioner, at substantial cost and expense: (1) agree to request these individuals leave the vessel and 'maintain' them in the U.S.; (2) agree to house, feed, and lodge these individuals in the U.S. ***through*** April 30, 2006, (3) provide a per diem to these individuals from the day they disembark the vessel up ***through*** April 30, 2006; (4) agree, (irrespective of the terms and conditions of the crewmembers individual employment contracts), to continue the employment of the twelve (12) crewmembers and pay their wages, and (5) ultimately bear the costs and expenses to repatriate the crewmembers who may remain in the U.S. (at the Coast Guard's request) ***through*** April 30, 2006.

18.     For the reasons more fully set forth herein, and pursuant to Supplemental

Rules For Certain Admiralty and Maritime Claims, Rule E (5) and Rule E (6), Petitioners respectfully request that this Honorable Court issue an Order releasing the vessel or in the alternative, an Order fixing the amount of security.

### THE COAST GUARD LACKS THE AUTHORITY, *AS A MATTER OF LAW*, TO WITHHOLD THE CUSTOMS CLEARANCE FOR THE M/V IRENE E.M.

19.     It is CBP, and <u>not</u> the Coast Guard, which has the authority to grant or deny a vessel's customs clearance. Here, the Coast Guard has improperly usurped the role of CBP, and is wrongfully detaining the vessel at anchorage.

20.     It is clear that under APPS, and specifically 33 U.S.C. § 1908(e), only the <u>CBP</u>, may refuse or revoke the customs clearance for a vessel.

21.     Specifically, 33 U.S.C § 1908(e) provides in pertinent part, the following:

> *§ 1908. Penalties for violations*
>
> \* \* \*
>
> *(e) Ship clearance or permits; refusal or revocation; bond or other surety. If any ship subject to the MARPOL Protocol, Annex IV to the Antarctic Protocol, or this Act, its owner, operator, or person in charge is liable for a fine or civil penalty under this section, or if reasonable cause exists to believe that the ship, its owner, operator, or person in charge may be subject to a fine or civil penalty under this section, the Secretary of the Treasury, upon the request of the Secretary, shall refuse or revoke the clearance required by section 4197 of the Revised Statutes of the United States (46 U.S.C. App. 91). Clearance may be granted upon the filing of a bond or other surety satisfactory to the Secretary.*[3]

22.     There are numerous administrative regulations that permit the Coast Guard to enforce other provisions of APPS. *See* 33 C.F.R. pts. 151 and 155. However, there are no

---

[3] In the instant matter, it is undisputable that neither the vessel *owner, operator, nor person in charge* has been found *liable for a fine or civil penalty under this section*. Accordingly, the portion of the statute at issue is whether *reasonable cause exists to believe that the ship, its owner, operator, or person in charge may be subject to a fine or civil penalty under this section.*

provisions that authorize the Coast Guard to detain a vessel by withholding her customs clearance.

23.     As it is beyond the statutory authority of the Coast Guard to withhold the vessel's customs clearance, it is respectfully submitted that the Coast Guard is impermissibly detaining the vessel.

24.     Accordingly, it is respectfully requested that this Honorable Court issue an Order releasing the vessel from the Coast Guard's "detention" forthwith.

### AS CBP HAS NOT REVOKED THE VESSEL'S CUSTOMS CLEARANCE, THE COAST GUARD IS IMPROPERLY DETAINING THE VESSEL AND IS DEMANDING STATUTORILY IMPERMISSIBLE CONDITIONS FOR ITS RELEASE

25.     To date, there has been no indication that CBP has withheld the vessel's customs clearance. Similarly, there has been no indication that the Coast Guard has even requested CBP to withhold the vessel's customs clearance pursuant to 33 U.S.C. § 1908(e).

26.     Rather, Petitioners have only been informed that the Coast Guard <u>may</u> request that CBP withhold the vessel's customs clearance. *See* Exhibit E. This is neither a factual nor legally sufficient statutory basis for the Coast Guard to continue to detain the vessel.

27.     The Coast Guard's improper detention of the vessel has necessarily caused, and continues to improperly cause, Petitioners great costs, expense, delay and undue economic hardship.[4]

---

[4] The vessel and her owner, upon information and belief, is losing in excess of $10,000 per day in hire each day that she remains improperly detained at the Marcus Hook Anchorage. As noted above, all deficiencies were remedied forthwith and the vessel was, in all other respects, "ready" to depart Marcus Hook

7

28.     33 U.S.C. § 1908(e), simply grants CBP the authority to withhold customs clearance <u>until</u> a vessel's owner posts a bond or other satisfactory surety. It does not provide statutory authority or any other authority for either the Coast Guard or CBP to demand Petitioner to "agree" to waive various rights and defenses, and otherwise "agree" to undertake the unjustified burdens set forth in paragraphs 15-17, above.[5]

29.     Accordingly, Petitioners respectfully request that the Court issue an Order releasing the vessel from further detention at Marcus Hook Anchorage.

### NEITHER THE COAST GUARD NOR CBP HAS DEMONSTRATED THAT "REASONABLE CAUSE" EXISTS TO BELIEVE THAT THE SHIP, ITS OWNER, OPERATOR, OR PERSON IN CHARGE MAY BE SUBJECT TO A FINE OR CIVIL PENALTY, AS IS REQUIRED BY APPS.

30.     Notwithstanding the foregoing, assuming, *arguendo*, that CBP is properly withholding the vessel's customs clearance, neither the Coast Guard nor CBP has demonstrated that there is a basis upon which to demand security.

31.     As stated above, the vessel's customs clearance in this matter may ***only*** be withheld by CBP, pursuant to 33 U.S.C. § 1908(e), upon a showing that *reasonable cause* exists to believe that the vessel, her owner, operator, or person in charge may be subject to a fine or civil penalty under APPS.[6]

32.     In the instant matter, despite repeated demands by Petitioner, the Coast Guard has failed to even allege, let alone establish, that *reasonable cause* exists to believe any

---

Anchorage since Tuesday, December 20, 2005 (*i.e.*-7 days and counting). (*See* Bureau Veritas Report, attached hereto as Exhibit C).

[5] Neither APPS nor its legislative history authorize the Coast Guard to withhold customs clearance until the owner gives up constitutional and statutory rights that have nothing to do with assuring the payment of a fine or penalty that *might* be imposed, as it has done in this case.

[6] Even when such circumstance exists, the Coast Guard can only <u>request</u> that the CBP refuse and/or revoke a vessel's customs clearance. Again, at no time is the Coast Guard authorized to directly withhold a vessel's customs clearance and/or otherwise detain a vessel for a suspected APPS violation.

violation of APPS has occurred, <u>and</u> that "the ship, its owner, operator, or person-in-charge may be subject to a fine or civil penalty" for such violation, as is required by the statute. *See* 33 U.S.C. § 1908(e).

33. Currently, the vessel is being detained on the mere conclusory allegation that: "serious safety and security deficiencies were identified and the vessel detained . . . in accordance with MARPOL, Annex I, Regulation 8A". (*See* Exhibit D, COTP Order dated: December 11, 2005). Such conclusory allegations, without more, fall far short of the Coast Guard's statutorily defined threshold burdens.

34. Such a self-serving, unsupported allegation is not "reasonable cause," and most certainly does not provide a legally sufficient basis upon which the Coast Guard may request, and/or the CBP detain the vessel by withholding her vessel's customs clearance.

35. While the legal test for what constitutes *"reasonable cause"* is not an exacting one, *see* <u>United States v. Dubrofsky</u>, 581 F.2d 208, 211 (9th Cir. 1978), it is clear that the United States must articulate specific facts in order to establish reasonable cause. *See* <u>United States v. Most</u>, 789 F.2d 1411, 1415 (9th Cir. 1986). Mere allegations or suspicions of wrongdoing do not provide a sufficient basis to establish reasonable cause. *See* <u>United States v. Chen</u>, 99 F.3d 1495, 1501 (9th Cir. 1996).

36. In the instant action, the Coast Guard has failed to articulate a single allegation that demonstrates that it has *reasonable cause* to believe a violation of APPS occurred on board the M/V IRENE E.M.; that such violation occurred within U.S. jurisdiction; <u>and</u> "the ship, its owner, operator, or person-in-charge may be subject to a fine or civil penalty" for such violation.

9

37. Moreover, in addition to the failure of the Coast Guard and/or CBP to even allege, let alone establish, that *"reasonable cause"* exists, there has not even been an allegation that any potential violation occurred within U.S. jurisdiction; that is, within the navigable waters of the United States.

38. APPS only allows the United States to regulate foreign-flagged vessels while in the navigable waters of the United States. *See* United States v. Royal Caribbean Cruises, Ltd., *supra,* at 1363; *See also* 33 U.S.C. § 1902(a)(1).

39. By the Coast Guard failing to meet the statutorily required threshold burden of showing that *"reasonable cause"* exists to believe that an APPS violation occurred; that any such alleged violation occurred within U.S. jurisdiction; and "the ship, its owner, operator, or person-in-charge may be subject to a fine or civil penalty" [for such violation], there is absolutely no basis, in either law or in fact, for the Coast Guard to continue to detain the vessel.

40. Accordingly, Petitioners respectfully request that the Court issue an Order releasing the vessel from being further detained at Marcus Hook Anchorage.

**ASSUMING, *ARGUENDO*, THE VESSEL HAS BEEN PROPERLY DETAINED, (WHICH IS DENIED), PETITIONER HAS AN ABSOLUTE RIGHT TO POST A BOND IN EXCHANGE FOR HER RELEASE**

41. As stated above, APPS is the U.S. codification and implementation of MARPOL. MARPOL is a multinational agreement that "attempts to strike a balance between the need to protect and preserve the marine environment **and the desire not to impose laws which make shipping prohibitively expensive.** *See* United States v. Apex Oil Company Inc., et. al., 132 F.3d 1287, 1291 (9th Cir. 1997)(emphasis added); *See also* Andrew Giffin, *MARPOL 73/78 And Vessel Pollution, A Glass Half Full or Half Empty,*

1 Ind. J. Global Legal Stud. 489, 490 (1994). In this case, the current demands of the Coast Guard for both bond and security and other conditions which it has no statutory right to demand, are not in keeping with the above pronouncement in the Apex Oil case.

42.     Moreover, a vessel owner has the absolute right to obtain the release of the vessel upon the posting of adequate security. See Gerard Construction, Inc. v. M/V VIRGINIA, 480 F. Supp. 488, 491 (W.D. Pa. 1979)(citing to 7A Moore's Federal Practice P E. 13(2)(2d ed. 1979); See also Supp. Rule E (5)(a).

43.     This right is an absolute right, which is not subject to the court's discretion. See Gerard Construction, Inc., 480 F. Supp. at 491.

44.     If, where as here, the amount of security to be posted can not be agreed, the Court is required to fix the principle sum of the bond or stipulation at an amount sufficient to only cover the alleged claim, which is before the Court at that moment.[7]

**ASSUMING, *ARGUENDO,* THE COAST GUARD HAS PROPERLY DEMONSTRATED THAT "REASONABLE CAUSE" EXISTS TO BELIEVE: (1) AN APPS VIOLATION OCCURRED; (2) WITHIN U.S. JURISDICTION; AND, (3) *"THE SHIP, ITS OWNER, OPERATOR, OR PERSON-IN-CHARGE MAY BE SUBJECT TO A FINE OR CIVIL PENALTY"* [FOR SAME], (ALL OF WHICH IS DENIED), THE AMOUNT OF THE SURETY, *IF ANY,* MUST BE $500,000, <u>OR LESS.</u>**

45.     Although Petitioners are not aware of any cases interpreting the relevant provision of APPS (*i.e.* 33 U.S.C § 1908(e)), APPS clearly provides for the enforcement of criminal liability **or** assessment of civil penalties for violations (1) which occur within

---

[7] As explained by the Fifth Circuit, 'the surety bond . . . is posted to assure payment of a single claim, not to stand in place of the vessel for all claims that might be asserted against her.' LaFarge Corporation v. M/V MACEDONIA HELLAS, 2000 U.S. Dist. LEXIS 22437, at *26-27 (E.D. La. 2000)(quoting Overstreet v. W/V NORKONG, 706 F.2d 641, 644 (5th Cir. 1983)).

11

U.S. jurisdiction, and (2) which "the ship, its owner, operator, or person-in-charge may be" liable.

46. The legislative history of the APPS makes it clear that the Coast Guard's authorization to request that CBP withhold or revoke a vessel's customs clearance was granted for the limited and express purpose to obtain security to ensure the payment of a fine **or** civil penalty that might be imposed against the owner and/or operator of a vessel.

47. Specifically, the House of Representatives Committee on Merchant Marine and Fisheries, in discussing HR 6665 (the Bill that was subsequently enacted as APPS) stated:

> *To ensure payment of any fine or civil penalties that might be incurred upon completion of criminal proceedings or civil penalty actions, the Secretary of Treasury is required to refuse or revoke clearance to any ship upon the request of the Secretary of Transportation. However, clearance may be granted upon filing a bond or other satisfactory surety.*
>
> *See* House Report No. 96-1224 *reprinted in* 1980 U.S.C.C.A.N. 4849, 4864.

48. The legislative history makes it clear that the purpose of authorizing the Coast Guard to request that CBP withhold a vessel's customs clearance and/or otherwise detain a vessel was simply to *ensure payment of any fine or civil penalty that might be incurred upon completion of criminal proceedings or civil penalty actions.* See House Report No. 96-1224 *reprinted in* 1980 U.S.C.C.A.N. 4849, 4864.

49. Specifically, APPS provides that the **maximum** civil penalty is $25,000,[8] while the **maximum** criminal fine could be *up to* $500,000.[9]  This potential maximum fine

---

[8] Specifically, 33 U.S.C. 1908(b) provides: "A person who is found by the Secretary, after notice and an opportunity for a hearing, to have--
  (1) violated the MARPOL Protocol, Annex IV to the Antarctic Protocol, this chapter, or the regulations issued thereunder shall be liable to the United States for **a civil penalty, not to exceed $25,000** for each violation; or
  (2) made a false, fictitious, or fraudulent statement or representation in any matter in which a statement or representation is required to be made to the Secretary under the MARPOL Protocol, Annex IV to the

12

amount, as with any other fine, is within the discretion of the Court to set. The Court, utilizing the Federal Sentencing Guidelines or any other criterion provided for in law, may set the fine at any appropriate amount below the maximum, if it so desires. *See* 18 U.S.C. § 3572.

50. No where does APPS authorize the Coast Guard or CBP to detain the vessel and/or withhold her customs clearance as leverage to force the vessel's owner to waive various rights and defenses; "agree" to undertake unjustified and unjustifiable obligations; and otherwise incur extreme costs, expenses and financial losses.

51. Assuming that this Court finds the Coast Guard has satisfactorily demonstrated that *"reasonable cause"* exists to believe that an APPS violation occurred; that any such alleged violation occurred within U.S. jurisdiction; and the ship, its owner, operator, or person-in-charge may be subject to a [civil] **penalty** [for such violation], the absolute maximum [civil] penalty is strictly limited to $25,000.

52. Similarly, assuming that this Court finds the Coast Guard has satisfactorily demonstrated that *"reasonable cause"* exists to believe that an APPS violation occurred; that any such alleged violation occurred within U.S. jurisdiction; and the ship, its owner, operator, or person-in-charge may be subject to a [criminal] **fine** [for such violation], the absolute maximum [criminal] fine is limited to an amount *up to* $500,000, without any of the other conditions presently demanded by the Coast Guard, which have no basis in fact or law. The Court, of course, has the discretion to order a bond to be posted in any

---

Antarctic Protocol, this chapter, or the regulations thereunder, shall be liable to the United States for a **civil penalty, not to exceed $5,000** for each statement or representation (emphasis added).

[9] Under 33 U.S.C. § 1908(a), it is a class D felony to knowingly violate the provisions of MARPOL. A class D felony is punishable by up to 10 years imprisonment, and **a fine of up to** $250,000 for an individual, and $500,000 for a corporation. *See* 33 U.S.C. § 1908(a); 18 U.S.C. § 3559(a)(4); 18 U.S.C. § 3571(b)(4); 18 U.S.C. § 3571(c)(3). (emphasis added).



amount below the aforesaid $500,000 potential fine that it deems appropriate and just under the circumstances of this case.

53. Accordingly, Petitioners respectfully request that this Court issue an Order fixing the principle sum of the surety bond to be posted, *if any*, for the release of the vessel, but in no case in an amount in excess of $500,000.

## CONCLUSION

**WHEREFORE,** Petitioners respectfully request that this Court issue an Order releasing the vessel, M/V IRENE E.M. from her present detention at the Marcus Hook Anchorage, or in the alternative, an Order fixing security, (if any), for the release of the vessel, as (1) the Coast Guard is not authorized to withhold a vessel's customs clearance; (2) the vessel is being improperly detained at Marcus Hook Anchorage, (3) the terms, conditions and quantum of security demanded by the Coast Guard for the release of the vessel are unjustified and unsupportable as a matter of fact, law and equity, and (4) all such actions are needlessly and impermissibly causing serious, irreparable harm and unjustifiable financial hardship to Petitioners, the vessel and her crew. Petitioners further request any and all such further relief which is just, proper and otherwise warranted.

Dated: December 26, 2005

Respectfully submitted,

_____
George M. Chalos, Esq. [10]
Brian T. McCarthy, Esq.
FOWLER RODRIGUEZ & CHALOS, LLP
Attorneys for Petitioners,
VENETICO MARINE S.A., and
M/V IRENE E.M., *in rem*
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Email: gmc@frc-law.com

---

[10] Although, at present, undersigned counsel are not members of the bar of the District of Delaware, counsel are members, in good standing of the bars of the State of New York, USDC-SDNY, and USDC-EDNY. The instant Petition is submitted pursuant to Local Rule 83.5. Undersigned counsel do not live within Delaware; are not regularly employed in Delaware; and are not regularly engaged in business, profession or other similar activities in Delaware. Undersigned counsel further represents that they are in the process of associating with an attorney who is a member of the bar of this court and maintains an office within the District of Delaware.

15

## CERTIFICATE OF SERVICE

I hereby certify that I have served on this 27th day of December 2005, a copy of the above PETITION TO RELEASE THE MOTOR VESSEL, *IRENE E.M.* OR IN THE ALTERNATIVE, TO FIX SECURITY, to all parties identified below, by facsimile transmission, overnight express courier, and by e-mail, as indicated below.

Lieutenant Kristian Pickrell
Fifth Coast Guard District Legal Office
431 Crawford Street
Portsmouth, Virginia 23704
Via Facsimile Transmission: (757) 398-6511
Via E-mail: Kristian.b.pickrell@uscg.mil

United States Customs and Border Protection
908 New Churchman's Road, Suite C
New Castle, DE 19720
Via Facsimile Transmission: (302) 326-0828

By: _____
George M. Chalos, Esq.